# April Term, 1911.

[No. 5925.]

## Stewart et al. v. Austin.

1. **Water Rights—Adjudication of Priorities—Effect of Decree**—Several appropriations from the same stream were made at different dates, all the appropriators using the same ditch. A decree in proceedings under the statute, awarded to these appropriators priorities as of the date of the first appropriation. No appeal having been taken, or other proceedings to question the decree, within the statute of limitations, it was held that the decree fixed forever the priority of the whole appropriation, as of the date of that first in point of time, though in fact all but the first were made at a much later date.—(250, 251)

2. **Water Rights—Appropriations—Means of Diversion**—It seems there may be an effectual appropriation by the diversion of water through a ditch already constructed by another, the right to use such ditch as a conduit being acquired by contract with the owner.—(254)

The respective rights of the parties are controlled by their intentions in this agreement.—(254, 255)

3. **Contract—Construction**—Where the proprietor of an irrigating ditch verbally agreed that two others might use it for conveying water to their claims, if they would help to keep it up, nothing being said as to what or how much they should do, held, it was to be presumed that each was to do an amount of work proportionate to his share of the water to be conveyed through the ditch.—(257)

4. **——Contemporaneous Conduct of Parties**—In seeking the intention of the parties to a verbal contract, vague in its terms, statements by those interested, made at the time, to which each assents, and the contemporaneous acts of the parties, or any of them, not objected to by others, furnish the best evidence, after the lapse of many years.—(255)

5. **Evidence—Competency—Effect** — In ascertaining the respective rights of several appropriators of water, the junior appropriators using a ditch previously constructed by the senior, the statements of claim made, and testimony given by the parties, in a proceeding for the adjudication of priorities insti-

(248)

tuted shortly subsequent to the junior appropriations, is competent evidence, and superior in value to the verbal testimony of the appropriators and others, later in interest, given years afterwards, as to their recollections and understandings.—(255)

Such statements of claim and testimony given in the adjudication proceedings, conclude the parties thereto and their successors in interest.—(256, 257)

6. Appeals—Finding Not Supported by Evidence—A finding not supported by any competent evidence must be set aside. The decree based thereon falls with such finding.—(257)

7. ——Decree Reversed With Directions—The appeal being from a decree in an equity cause, the decree was reversed with directions to the court below to so modify it as to conform to the views expressed in the opinion.—(258)

8. Costs—Equity Cause—Apportionment — Where, in a bill to quiet title, each party fails in his contentions, it is fair that, inasmuch as they are equally interested, each should pay one-half the costs.—(258)

*Appeal from Conejos District Court*—Hon. JESSE G. NORTHCUTT, Judge.

Mr. GEORGE T. SUMNER for appellants.

Messrs. HAYT, DAWSON & WRIGHT for appellee.

Mr. JUSTICE MUSSER delivered the opinion of the court:

The appellants, at the time of the adjudication proceedings, hereinafter mentioned, were the owners of three quarter sections of land in Conejos county. For the purpose of irrigating this land they took water from the Conejos river, through a ditch constructed by them, and called "The William Stewart & Company Irrigating Ditch." The construction of the ditch was fully completed several years prior to 1882. About the year 1882 two brothers, J. R. Garcia and A. P. Garcia, came to Mr. Stewart and told him that they would take up land under the ditch if he would let them use water through it to irrigate the lands which they were to take up. Mr. Stewart,

desiring to have someone settle on the land near him, told them he would permit them to use the ditch if they would help keep it up each year, and this they agreed to do. The Garcias each took up a quarter section of land and used this ditch to convey water to it for about four years, although they never irrigated to exceed about twenty to thirty acres each.

In October, 1883, a decree was entered in the district court of Conejos county adjudicating the priorities of water rights in that water district, and the priority of water rights through this ditch was settled as No. 43, and the amount fixed as so much water as would flow in a ditch six feet wide and one foot deep, on a grade of four feet to the mile. The decree is silent as to the number of acres that this ditch was intended to irrigate. In the adjudication proceeding, Stewart and the two Garcias filed statements of their respective claims to water rights through this ditch, and these statements, and some of the testimony before the referee were introduced, without objection, as testimony in this case. From these statements and testimony in the adjudication proceeding, it appears that Stewart claimed a water right through his ditch for the purpose of irrigating his land, which consisted of three quarter sections, all susceptible to irrigation, and each of the Garcias claimed a right, through the same ditch, to irrigate his land, one quarter section, all susceptible of irrigation. In the several statements the capacity of the ditch was given as 864 inches. Stewart claimed 400 inches, and each of the Garcias claimed 155 inches. The claims of Stewart and the Garcias were all adjudicated in one priority, as above stated. In the statements and testimony in the adjudication, the rights of the Garcias are spoken of as appropriations made by them and purchases from Stewart. The impression left on the mind by the

testimony is that the right of the Garcias to water was by their appropriation of it, and the right to use the ditch, whatever it was, was what was purchased from Stewart. The Garcias claimed appropriations through the ditch in 1882, and the court fixed the date of the whole appropriation back to 1876, when the original appropriation was made by Stewart. This, of course, now fixes forever the priority of the whole appropriation, as made by Stewart and the Garcias, notwithstanding the appropriation of the Garcias may have in fact been made in 1882. The two quarter sections of the Garcias, and their rights to water, and to the use of the ditch, whatever they may be, came down through successive conveyances to the appellee Austin. The Garcias and their several successors continued to use water through the ditch, helping in its care and repair, increasing the number of acres irrigated, until the land irrigated by them, through the ditch, amounted to 400 acres or over at the time of the commencement of this action. The Stewarts also continued to use water through the ditch, increasing the number of acres irrigated from 320 acres in 1883, until the land irrigated by them, through the ditch, amounted to 600 acres, or more, at the time of the commencement of this action. The exact rights of the respective parties in the water and the ditch, and the amount of work to be done by each upon the ditch, never seemed to have been defined with certainty. One of the intermediate owners of the Garcia interest testified that it was his understanding that the Garcias each owned a one-third interest in the water right, but this testimony was only the opinion of the witness, based upon the fact that three (Stewart and the Garcias), were interested. There was also testimony to the effect that some of the time the appellee and his immedi-

ate grantor used, apparently, from one-half to two-thirds of the water flowing in the ditch, but this was not done under claim of that amount as against Stewart or adverse to him. It apparently was done when there was plenty of water in the ditch, and all received as much as they wanted, without particular reference to the exact interest of either, except that there was some testimony on behalf of Austin that, in 1901 and 1902, he generally took two-thirds of the water, because he thought he was entitled to it. On the other hand, there was testimony, on behalf of the Stewarts, that they controlled the .division of the water, and when it was low the Stewarts took it all if they needed it and deprived the others of it, and also that the interest of the Garcias was two feet of water out of the ditch, whose capacity was found to be 9 1-10 feet, or cubic feet, but this two feet appears to refer more to the amount the Garcias needed at the time than to refer to their actual interest in the water right. Through the many years that preceded the year 1902, each owner seemed to get all the water he wanted, without particular reference to the exact rights of each, and each helped in the work on the ditch as required, and each seemed to recognize the rights and duties of the other, whatever they were, springing from the arrangement between Stewart and the Garcias in 1882. No difficulty or dispute arose until about the summer of 1902. At that time Stewart claimed that Austin, through his representative, refused or failed to work on the ditch when the work ought to have been done. On this account Stewart claimed that Austin had no right to use the ditch, and interfered with Austin's use of it. Stewart does not appear to dispute that Austin had an interest in the water right, nor that Austin had a right to use the ditch, if the work had been done,

for Stewart testified that if he had helped to work on the ditch, Austin would have the right to use it. Austin brought this action in the nature of a suit to quiet title, alleging that he is the owner of an undivided two-thirds of the ditch and water right; that he derives title thereto by purchase from the Garcias, and by prescription and by use thereof, without objection; that the defendants have set up a claim of right to two-thirds interest in the ditch and water right, and have interfered with and prevented the use, by plaintiff, of his two-thirds interest, and that the defendants have only a one-third interest in the ditch and water right, and pray that the defendants set forth their claims, and that upon the final hearing it be adjudged that plaintiff is the owner of two-thirds of the ditch and water rights, and that the defendants be enjoined from interfering with plaintiff's use thereof. The defendants answered, substantially denying the allegations of the complaint and alleging that the only interest that the Garcias had in the ditch or water right was a mere temporary use, under annual rental agreements with Stewart, whereby they would have the right to the carriage of water through the ditch, for the irrigation of about fifty acres of land, they making payments annually to Stewart for the use thereof; that the whole of the ditch and all of the water right belonged to Stewart; that the Garcias had no transferable interest therein, and that whatever right they, or any one claiming through them, may have had, is terminated.

The court below found, among other things, that the ownership of the ditch was in the defendants, subject to the right of plaintiff to use it for the conveyance of water, upon complying with certain terms and conditions, namely, doing one-half of the work necessary to keep the ditch, headgate

and dam in repair, and that the plaintiff is entitled to the use of one-half of the water in the ditch, at all times, when water shall be flowing therein. It was adjudged that the plaintiff is the owner of one-half of the water right adjudged to said ditch, by the decree of 1883, and the title of the plaintiff to that amount of water was quieted in him, and it was further adjudged that the plaintiff has a right to the use of the ditch for the purpose of conveying his said water to his said land, as long as he shall perform one-half of the work necessary to keep the ditch, dam and headgate in repair. The findings and judgment of the court below, as to the interest which the appellee Austin has in the water right, and as to the amount of work necessary for him to perform to keep the ditch, headgate and dam in repair, are not supported by any legal evidence.

In determining the interest of each, there can be no question of abandonment, as appellee contends, for nothing appears to have been abandoned. The acreage to which the water has been applied by Austin and his grantors has been gradually increased to 400 acres, or over, and by the Stewarts to 600 acres or over. Austin's 400 acres, now irrigated, bears the same ratio to Stewart's 600 acres, now irrigated, as the Garcias' original two quarter sections, susceptible of irrigation, bore to Stewart's three quarter sections, susceptible of irrigation. As has been seen, the interests of the Garcias in the water rights evidently rest upon original appropriations made by them, and their right to the use of the ditch rests upon contract with Stewart. To ascertain the respective interest of Stewart and Austin in the whole appropriation, and of the rights of Austin in the ditch, which the court found was owned by Stewart, subject to Austin's right, all that is necessary to do is to determine the intention and

acts of Stewart and the Garcias, when the arrangements between them were made. In determining this, the statements made by those interested at the time, to which each assented, and the acts done by them at the time, which were accepted by each, furnish the best evidence, after the lapse of so many years, of what their intentions were, and so far as this record is concerned, these statements and acts are best shown by the testimony and statements of claim in the adjudication proceeding, which led up to the decree of 1883.—*Woods v. Sargent,* 43 Colo. 268, at 272. The court below found that Stewart and Austin were each the owner of one-half of the water right. If there was sufficient legal evidence to support this finding, under the well-known rule of this court, the finding would not be disturbed. The appellants claim there is no evidence to support it, and the appellee, while attempting to point out evidence to support it, is not so persuasive as to bring the mind to a settled conclusion that he is right. The appellee argues that Stewart stated at the adjudication that the capacity of the ditch was 864 inches, and that at the same time Stewart said he claimed 400 inches, and as 400 inches is nearly one-half of 864, that fact, taken in connection with the testimony mentioned above, of an intermittent use, not apparently adverse, of from one-half to two-thirds of the water in the ditch, sustains the finding. The trouble here is that 400 is not one-half of 864; and, besides, in the same adjudication, the Garcias each claimed only 155 inches, or a total of 310 inches out of the 864 inches, and for a long time they and their successors used a less proportion out of the ditch. If the claim of Stewart is to bind him, then the claim of the Garcias must bind them and their successors. The number of inches claimed by Stewart and the Garcias aggregates 710.

If the claims of each, as expressed in inches, should now fix the respective interests of each, then for all practical purposes four-sevenths would be the interest of Stewart, and three-sevenths that of the Garcias. This, however, would not sustain the finding of the court.

The expression, in inches, of the claims of the several owners is indefinite as to what was really intended. In fact, the use of the term "inches" creates confusion. The whole volume of the appropriation, or the full capacity of the ditch, was computed, at the time, to be 864 inches, whatever that may mean. The aggregate of the claims of the owners, as expressed in inches, in their statements of claim, was 710 inches. They certainly did not intend to abandon the other 154 inches. That they did not so intend is shown by the fact that the court, by priority decree, awarded them a volume that would flow in a ditch that was, at the time, computed to be of a capacity of 864 inches, so that the claim of Stewart to 400 inches, and of the two Garcias of 310 inches, cannot be fairly taken as the expression of their understanding of the division of the whole appropriation among them. It appears, without contradiction, that it was the intention of Stewart and the Garcias, at that time, to use the appropriation to irrigate five quarter sections of land. In their several statements, and in the testimony before the referee, they were particularly careful in bringing out the facts that Stewart owned three quarter sections, and the Garcias two quarter sections of land; that all this land was susceptible of irrigation; that Stewart claimed so much of the water as was sufficient to irrigate his land, and each of the Garcias claimed so much of the water as was sufficient to irrigate his land, and upon these claims and testimony, and with reference to the same, the

priority decree was entered by the court, and each claimant concurred in claiming that, with this priority, it was proposed to irrigate five quarter sections of land, of which Stewart owned three and the Garcias two, all of which appears to be substantially the same in condition. From this it follows that, upon this record, by their acts, aside from their intentions, the appropriators of water, through this ditch, fixed the relative interest of each in the appropriation at three-fifths for Stewart and two-fifths for the Garcias.

The district court found and adjudged that Austin should do half the work necessary to keep the ditch, dam and headgate in repair. It did this, no doubt, because it found that Austin owned one-half of the water right. The only evidence in regard to this was that Stewart told the Garcias they might use the ditch if they would help keep it up. Nothing was said as to how much work they should do. In the absence of any other evidence, it would be presumed that each was to do an amount of work in proportion to his interest in the water right to be conveyed through the ditch.

As the finding and judgment of the court relative to the interest of each in the water right has failed, the finding and judgment of the amount of work to be done must fall with the finding upon which it was based, and the finding and judgment with regard to the work should be that Austin perform two-fifths thereof. This also will conform to sec. 4051, Rev. Stats., if that section is applicable to this case. The court adjudged that Stewart should pay all the costs. Austin did not maintain the allegations of his complaint in their entirety; neither did Stewart those of the answer. The parties are equal in this regard. They were both interested in having the matter definitely determined. For these rea-

sons it is fair to say that each should pay half the costs in the district court.

The judgment is reversed, and as a desire is expressed that this litigation be ended, the cause is remanded, with directions to the district court to set aside the decree and modify it, so as to conform with the views herein expressed, and, as so modified, to enter it as of its former date as the final judgment in this cause. The motion for rehearing is denied.

*Judgment reversed and cause remanded,*
*with directions.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE GARRIGUES concur.

Decided December 6, 1909; rehearing denied May 1, 1911.